IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GLENN T. TURNER,

                              Plaintiff,

        v.

GARY BOUGHTON, MARK KARTMAN,                              OPINION and ORDER
HEIDI BROWN, MS. KROENING,
JONI SHANNON-SHARPE, MR. BROOKS,                              21-cv-716-jdp
SGT. WINGER, DR. SCHWENN,
and LEBBEUS BROWN,

                              Defendants.

---

Plaintiff Glenn T. Turner, appearing pro se, is a prisoner at Wisconsin Secure Program Facility (WSPF). Turner alleges that in November 2020 he contracted COVID-19 after defendant prison officials unnecessarily forced him to join an in-person meeting with several staff members.

Both Turner and defendants have filed motions for summary judgment. Dkts. 27 and 32. Because Turner fails to show that he contracted COVID-19 at the meeting, I will deny Turner's motion, grant defendants' motion, and dismiss the case.

PRELIMINARY MATTERS

In a February 10, 2023 order, I granted Turner's motion to compel discovery in part, directing those defendants who were present at the November 17, 2020 meeting with Turner to produce records of any positive COVID-19 results they had between October 15 and December 15, 2020. Dkt. 26, at 5. During summary judgment briefing, Turner filed a second motion to compel discovery suggesting that defendants did not respond to the court's order.

Dkt. 51. Defendants' summary judgment materials appeared to contain the information Turner sought: they submitted a declaration of prison litigation coordinator Ellen Ray stating that there are no records of defendants testing positive during the timeframe in question. But it was unclear how Ray had personal knowledge of defendants' test results or other medical records, so the court gave defendants a short time to submit evidence admissible at summary judgment supporting their representation that there were no positive tests to produce to Turner. Dkt. 55.

Before receiving defendants' response, Turner filed another motion asking "to moot" his previous motion to compel discovery because defendants followed with responses to his discovery requests. Dkt. 56. So I will consider Turner's second motion to compel withdrawn. Turner attaches defendants' discovery responses, stating that (1) WSPF staff was required to test for COVID-19; (2) WSPF compiled staff's positive tests but did not keep track of negative tests; and (3) defendants had no positive tests from October 15 to December 15. *See* Dkt. 56-2. That provides adequate support for Ray's declaration.

In his new filing, Turner also states that WSPF officials have placed him in temporary lockup without a valid reason and that they have confiscated his legal property. Summary judgment briefing is completed, so Turner's new allegations do not affect the outcome in this opinion. But because Turner retains the right to file post-judgment motions or an appeal, I will direct defendants to respond to his motion.

## UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Plaintiff Glenn T. Turner is incarcerated at WSPF. Defendants all worked there. Gary Boughton was the warden, Mark Kartman was the security director, and Lebbeus Brown and Heidi Brown were unit managers. This lawsuit concerns a November 17, 2020 meeting at which Turner believes he contracted COVID-19. Turner states that defendant prison employees Heidi Brown, Chad Winger, Heather Schwenn, Joni Shannon-Sharpe, Ronald Brooks, and Trina Kroening-Skime were present at that meeting.

Turner says that he suffered from asthma, high blood pressure, depression, and anxiety, which I take him to be saying made him particularly at risk of complications from a COVID infection. He contends that prison supervisors did not take COVID-19 seriously enough.

In mid-March 2020, the Department of Corrections (DOC) issued a memo stating that it was temporarily suspending most visits in its facilities. In mid-April 2020 the DOC issued a memo encouraging inmates to wear masks. Around that time, Turner wrote to some of the defendant supervisors to mandate that prison employees wear masks; they responded that masks were optional. He followed with an inmate grievance stating that staff should be required to wear masks. That grievance was dismissed, with the examiner stating that employees were encouraged to wear masks and that employees were screened for COVID symptoms before entering the prison. The DOC did not issue a mask mandate for its employees until mid-July 2020.

Turner was housed in administrative confinement, a type of solitary confinement. All inmates in administrative confinement are placed in the "Progressing through Administrative Confinement Effectively" (PACE) program. There are four phases to the PACE program, each

placing different programing requirements on prisoners and allowing them different privileges. For instance, at the time of the incident at issue here, Turner was allowed seven hours of out-of-cell time a week, he could attend recreation with two other individuals, and he could go to the Health Services Unit or the library.

A prison "unit team" regularly reviews an inmate's assessments, conduct history, and programming. When a prisoner is eligible for advancement to the next phase of the PACE program, the unit team holds an interview with the prisoner. In late October, Turner's unit team determined that he was eligible to apply for Phase 4. An in-person interview was set for November 17, 2020. Defendants say that the interview was not mandatory and that an inmate could decline to attend; Turner states that no one informed him that the interview was optional. Turner objected to the interview being held in-person and he asked defendants Heidi Brown and Winger for a waiver of the interview or for alternate arrangements. They refused.

On the day of the interview, Turner approached the interview room and saw a group of prison employees, including defendants Winger, Schwenn, and Brooks, talking without masks on. The interview was held in a "group room" that measured 13 feet 4 inches by 12 feet 6 inches. Turner was joined in the room by defendants Heidi Brown, Winger, Schwenn, Shannon-Sharpe, Brooks, and Kroening-Skime, as well as a DOC intern, for a total of eight people. The parties don't say how long the interview took. Everyone wore masks during the interview, although Turner states that defendants all wore "wet and ill-fitting face masks." Dkt. 29, at 9, ¶ 43. Turner also states that defendants Brooks and Winger showed signs of illness: they "were both constantly coughing, sneezing, and blowing their noses, which they had to lift or remove their masks to do." Dkt. 45, at 9, ¶ 43. He also says that they were sweating. Defendants state that none of them tested positive for COVID-19 for a month

preceding or a month following the November 17 meeting. Their timesheets show that none of them had extended absences from work around this time.

Two or three days after the meeting, Turner began to have a sore throat, which worsened, along with his mouth going numb. He also began to experience flu-like symptoms. He tested positive for COVID after a November 30, 2020 test. Turner felt severe body pain for about 10–12 days, along with lethargy, depression, loss of taste and smell, and labored breathing that was exacerbated by his asthma.

Turner filed an inmate grievance about the in-person meeting that was affirmed, with the examiner stating that "at this time in-person meetings were not recommended." Dkt. 31-6, at 4.

Turner later attended another PACE group interview, where only a few of the defendants were present in the room, socially distanced, with others appearing by telephone.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

I granted Turner leave to proceed on two sets of Eighth Amendment and Wisconsin-law negligence claims:

- Defendants Brooks, Heidi Brown, Kroenig, Shannon-Sharpe, Schwenn, and Winger forced Turner to participate with them in an in-person group interview despite the risk of COVID spread.

- Defendants Boughton, Kartman, Heidi Brown, and Lebbeus Brown failed to implement or enforce a mask mandate for staff at the prison.

The Eighth Amendment prohibits prison officials from acting with conscious disregard toward prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one

for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A defendant "consciously disregards" an inmate's need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

Under Wisconsin law, a claim for negligence includes the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) harm to the plaintiff. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860 (2001).

## A. In-person meeting

Turner contends that defendants Brooks, Heidi Brown, Kroenig, Shannon-Sharpe, Schwenn, and Winger forced Turner to join them for an in-person group interview despite the risk of COVID spread.

Based on the undisputed facts, a reasonable jury could conclude that defendants unnecessarily exposed Turner to the risk of COVID infection by holding the in-person meeting. They held the meeting in a room about 13 by 13 feet, which might barely have been enough for the eight people in the room (Turner, the six defendants, and a DOC intern) to socially

6

distance by keeping six feet from one another. But Turner states that they did not "practic[e] . . . social distancing" during the meeting, Dkt. 45, at 9, ¶ 44, by which I take to mean that they did not keep six feet away from Turner. Although the parties don't explain how long the meeting lasted, Turner states that defendants Winger and Brooks were coughing, sweating, blowing their noses, and sneezing during the meeting. And defendants apparently held the interview despite DOC policies discouraging in-person meetings: Turner won a grievance about defendants holding the meeting. Defendants contend that Turner's attendance wasn't mandatory, but Turner adequately disputes that assertion, stating that no one told him that he could opt out of attendance. Under these circumstances, a jury could conclude that it was unreasonable for defendants to hold the in-person meeting in the teeth of the COVID pandemic.

But that is not all Turner needs to prove to prevail on his Eighth Amendment or negligence claims. Turner also has the burden to prove that defendants' actions actually caused him harm; the mere exposure to a risk that ultimately fails to materialize is not enough to support his claims. *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) ("risk is not compensable [for constitutional claim] without evidence of injury"); *Hennekens v. Hoerl*, 160 Wis. 2d 144, 465 N.W.2d 812, 816 (1991) (plaintiff must identify evidence that defendants' actions caused him "actual damage."). In this case that means that Turner must provide evidence showing that he contracted COVID at the meeting. Turner fails in this task.

Turner grounds his claim on two main points: (1) defendants Brooks and Winger showed signs of illness during the meeting; and (2) he began to experience COVID symptoms two or three days after the meeting. Turner contends that this shows that Brooks and Winger had COVID-19 at the meeting and that he caught it from them.

Defendants argue that Turner doesn't have the expert medical knowledge to opine that Brooks's and Winger's coughing or other symptoms showed that they were sick. I disagree that expert testimony is necessary to note that another person appears to be suffering from an illness of some sort; a layperson's everyday experience could suffice for that. So a reasonable jury could infer from Turner's testimony that Brooks and Winger might have been sick. But that is a far cry from establishing that either Brooks or Winger was suffering from COVID-19. No layperson (or even a medical professional) would be able to diagnose someone with COVID just from reported symptoms of coughing, sneezing, and sweating. And there is no evidence showing that any of the defendants at the meeting had COVID at the time. In particular, they report that none of them had a positive test for the time period about a month before to a month after the meeting.

Turner argues that his infection must have come from the meeting because of the timing of his symptoms and because he was in administrative confinement, which kept him largely isolated. But defendants point out that Turner was not completely isolated during the relevant times: he had various out-of-cell privileges placing him in proximity to other inmates and staff, and regardless of his out-of-cell time he still had contact with prison staff outside the PACE meeting. Turner does not say that his human contact was limited to the defendants at the PACE meeting.

In short, Turner suspects that he contracted COVID-19 at the PACE meeting, but his mere suspicion is not enough to lead a jury to reasonably infer that this is what happened. *See, e.g.*, *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (While nonmovant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."

(citation omitted)). *Correa v. Woodman's Food Mkt.*, 2020 WI 43, ¶ 16, 391 Wis. 2d 651, 943 N.W.2d 535 ("Before the case may reach the jury, the plaintiff must present a quantum of evidence sufficient to render the eventual answer non-speculative.").

Courts often observe that summary judgment requires the party with the burden of proof to "put up or shut up," pointing to evidence from which a reasonable jury could find in its favor of each element of its claim. *See, e.g., Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). Although defendants' decision to hold an in-person meeting was perhaps irresponsible, Turner's failure to present evidence that could lead a jury to find that the meeting caused his COVID infection dooms both his Eighth Amendment and negligence claims. I will deny Turner's motion for summary judgment and grant defendants' motion for summary judgment on the claims against the staff members present at the PACE meeting.

## B. Mask mandate

Turner also alleges that supervisors Boughton, Kartman, Heidi Brown, and Lebbeus Brown failed to implement or enforce a mask mandate for staff at the prison. But his proposed findings about this aspect of his claims point back to April 2020, when he filed an inmate grievance complaining that the prison had not implemented a mask mandate. That was months before the events at issue in this case, well before Turner caught COVID. And it is undisputed that in July 2020 WSPF did start mandating that staff and inmates wear masks.

Turner states that defendants staff failed to adhere to the mandate during parts of the events here: he says that before the PACE meeting he saw several defendants standing near the sergeant's cage talking to each other without face masks on. He also states that Winger and Brooks lifted or removed their masks to blow their noses during the meeting. But that's evidence that particular defendants failed to follow the masking policy; it's not enough to raise

a reasonable inference that the supervisor defendants failed to enforce the policy. Turner also argues that the masks provided by the DOC were ill fitting and did not adequately protect inmates. I did not allow Turner to proceed on a claim about the quality of the masks, but in any case, any such claim would fail for the same reason as his claims regarding the PACE meeting: he fails to show that he contracted COVID at the meeting. I will deny Turner's motion for summary judgment against the supervisory defendants, grant defendants' motion for summary judgment, and dismiss the case.

## ORDER

IT IS ORDERED that:

1.  Plaintiff Glenn T. Turner's motion to compel discovery, Dkt. 51, is WITHDRAWN.

2.  Plaintiff's motion for summary judgment, Dkt. 27, is DENIED.

3.  Defendants' motion for summary judgment, Dkt. 32, is GRANTED.

4.  The clerk of court is directed to enter judgment for defendants and close the case.

5.  Defendants have until June 15, 2023, to respond to plaintiff's motion regarding his access to the courts, Dkt. 56.

Entered June 1, 2023.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

10